UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

Case No. 2:22-cv-20049-1

HONORABLE STEPHEN J. MURPHY, III

v.

LADARRYL DEWAYNE ROSS,

          Defendant.

_____/

**OPINION AND ORDER**
**DENYING MOTION TO SUPPRESS [18]**

Defendant was indicted on one count of felon in possession of a firearm under 18 U.S.C. § 922(g)(1). ECF 11. Defendant moved to suppress "all evidence obtained as a result of the unconstitutional seizure and custodial interrogation of [him] on June 30, 2021," including the firearm recovered from his person. ECF 18, PgID 44–45.

The Court held an evidentiary hearing on the motion during which the Government called the three Detroit police officers who stopped and later arrested Defendant. ECF 24. The Government also played two of the officers' body camera videos. *See generally id.* The videos, however, have not been docketed as exhibits for the motion. Defendant had a full opportunity to cross-examine the three officers. Based on the testimony of the three officers, the Court will deny the motion to suppress.

1

## BACKGROUND

On the morning of June 30, 2021, Detroit Police Officers Dante Borum, Aaron Thompson, and Daron Zhou, members of the Department's special operations unit, were on patrol in the Ninth Precinct. *Id.* at 92, 113, 125. Officer Borum was in the driver's seat, Officer Zhou was in the passenger's seat, and Officer Thompson was in the rear seat directly behind Officer Zhou. *Id.* at 93, 96.

The officers were driving on Maiden Street toward Chalmers Street. *Id.* at 104. The two streets meet at a T-shaped intersection with Maiden Street acting as the stem and Chalmers Street acting as the bar. *Id.* at 133. Officer Borum stopped the patrol vehicle just before the intersection so that the officers were parked on Maiden Street facing Chalmers Street. *Id.*

Officer Borum looked to his left and saw Defendant walking down Chalmers Street toward the officers' car. *Id.* at 116. Rather than cross the street in front of the police vehicle, Defendant swerved to walk behind the vehicle. *Id.* As Defendant was walking behind the vehicle, Officer Borum saw an object beneath Defendant's clothing that stuck out a few inches from his body. *Id.* at 116–18. Officer Borum alerted his partners that he believed the object was a firearm. *Id.* at 116–17.

As Defendant came around the vehicle and started to make his way back toward Chalmers Street to continue southbound, Officer Thompson looked out the window and saw the same object under Defendant's clothing protruding several inches from the right side of Defendant's waistline. *Id.* at 129, 133. Officer Thompson also noticed that Defendant had a tether on his left ankle. *Id.* at 129. Officer

Thompson agreed with Officer Borum's assessment that the object causing the protrusion was likely a firearm. *See id.*

Officer Thompson rolled down his window and asked Defendant if he had a concealed carry license. *Id.* Defendant slightly turned toward Officer Thompson, who began to exit the patrol car, and responded that he left his concealed carry license at home. *Id.* at 130.

Based on Defendant's answer, the protrusion that looked like a firearm in both his and Officer Borum's experiences, and the tether on Defendant's ankle, Officer Thompson believed that Defendant was illegally concealing or possessing a firearm under Michigan law. *Id.* at 130–31. Officer Thompson frisked Defendant and found a firearm concealed under Defendant's clothing near the right side of Defendant's waistline—the exact spot where Officer Thompson and Officer Borum noticed an object protruding as Defendant walked around their patrol car. *Id.* at 131. The officers then arrested Defendant. *Id.* at 132.

## LEGAL STANDARD

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." In general, a warrant based on probable cause is required for a search or seizure. *Id.* But a limited exception to the requirements exists for an investigatory detention, such as a stop and frisk, *if* an officer has reasonable suspicion: "specific and articulable facts which, taken together with rational inferences from those facts,

reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (footnote omitted); *see also United States v. Stennis*, 457 F. App'x 494, 499 (6th Cir. 2012).

Although an officer needs "more than a mere hunch," a reasonable suspicion "is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard." *Dorsey v. Barber*, 517 F3d 389, 395 (6th Cir. 2008) (quotation omitted). Courts determine whether a police officer had reasonable suspicion using an "objective standard" that examines whether the facts available to the officer at the time would have warranted a reasonable person to conduct the search or seizure. *Terry*, 392 U.S. at 21–22. Courts must give "due weight" to "reasonable inferences" that an officer "draw[s] from the facts in light of his experience." *Id.* at 27.

Typically the evaluation of an investigatory detention involves a two-step inquiry: first, whether the detention was reasonable at its inception; and second, whether the scope of the detention was reasonably related to the circumstances that led to the detention. *Stennis*, 457 F. App'x at 499 (citing *United States v. Perez*, 440 F.3d 363, 372 (6th Cir. 2006)).

## DISCUSSION

The officers' investigatory detention was reasonable both at its inception and in its scope. An officer's observation of a bulge under an individual's clothing permits that officer to pat down the individual because "any man of reasonable caution" would conclude that the individual was armed and dangerous and remove the firearm from

4

the individual. *Pennsylvania v. Mimms*, 434 U.S. 106, 111–12 (1977) (internal quotation marks omitted).

Both Officer Borum and Officer Thompson saw an object protruding several inches from Defendant's waistline as he walked around their patrol car. ECF 24, PgID 116–18, 129, 133. The officers, based on their experiences, believed the object to be a firearm. *Id.* And the officers had reason to believe that Defendant could not possess the firearm because he had the kind of tether on his ankle associated with probation or parole. *Id.*

Observing the object protruding from Defendant's waistline in a bulge-like fashion alone provided the officers with reasonable suspicion that Defendant was armed and dangerous; that reasonable suspicion permitted them to frisk Defendant to confirm or dispel their suspicion. *Mimms*, 434 U.S. at 111–12.

The scope of Officer Thompson's frisk was reasonable because he reached right for the protruding object and immediately retrieved a firearm that Defendant had concealed there. ECF 24, PgID 131. Because Officer Thompson recovered a concealed firearm on Defendant's person and because Defendant did not have a concealed carry license, the officers then had probable cause to arrest Defendant for violating Michigan law.

Because the officers had reasonable suspicion to stop and frisk Defendant, and because the frisk was reasonable in scope, the Court will deny Defendant's motion to suppress the fruits of the search and seizure.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that the motion to suppress [18] is **DENIED**.

**SO ORDERED.**

s/ Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: August 18, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 18, 2022, by electronic and/or ordinary mail.

s/ David P. Parker
Case Manager